IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
BEAUMONT DIVISION

| | |
|---|---|
| REPUBLIC TECHNOLOGIES (NA), LLC and REPUBLIC TOBACCO LP, Plaintiffs, vs. THERESA M. GROSS d/b/a/ TEES CHEAP TOBACCO, Defendant. | No. 1:20-CV-00390-MAC-ZJH |

## REPORT AND RECOMMENDATION GRANTING DEFENDANTS' MOTION TO DISMISS

This case is assigned to the Honorable Marcia A. Crone, United States District Judge, and is referred to the undersigned for pretrial management. Doc. No. 7. This matter comes before the court in an unusual procedural posture, originating from Republic Technologies (NA), LLC and Republic Tobacco LP's (together, "Republic") trademark infringement complaint against Theresa M. Gross and her tobacco shop, Tees Cheap Tobacco. Doc. No. 1. Republic's case and complaint are still pending before the court, even though the Defendants attempted to dismiss their case under Rule 41. Gross now brings counterclaims against Republic, primarily basing her claims on injuries incurred as a result of Republic initiating this allegedly frivolous lawsuit.

Pending before the court are Plaintiffs/Counter-Defendants Republic Technologies (NA), LLC and Republic Tobacco LP's ("Republic") two separate *Motions to Dismiss*. Doc. Nos. 34, 52. On September 14, 2022, Defendant/Counter-Plaintiff Theresa M. Gross d/b/a Tees Cheap Tobacco [hereinafter, "Gross"], proceeding *pro se*, filed her *Amended Counterclaims for Injunctive Relief and Damages* ("Amended Counterclaims"). Doc. No. 50. As Gross's *Amended Counterclaims* (Doc. No. 50) have superseded her earlier pleadings, the undersigned recommends dismissing Republic's June 9, 2022 *Motion to Dismiss* (Doc. No. 34) as moot. Therefore, the court

will only consider and provide a recommendation for Republic's pending September 28, 2022 *Motion to Dismiss Amended Counterclaims* ("Motion to Dismiss") (Doc. No. 52).

Because Gross is proceeding *pro se*, the court necessarily holds her pleadings to "less stringent standards than formal pleadings drafted by lawyers" and construes them liberally. *See Haines v. Kerner*, 404 U.S. 519, 520 (1972); *Perez v. United States*, 312 F.3d 191, 194-95 (5th Cir. 2002). However, even provided a liberal construction of her claims, Gross has not plausibly stated a claim for which relief may be granted on any of her counterclaims or special damages requests. Therefore, the undersigned recommends granting Republic's motion to dismiss in its entirety.

## I.    Factual and Procedural Background

Republic Technologies is a corporation that owns the trademark for the "JOB" logo placed primarily on tobacco products, such as cigarette rolling papers. Doc. No. 1, ¶¶ 6-13. Republic Tobacco, on the other hand, is Republic Technologies's "exclusive master distributor" and "exclusive U.S. licensee," that distributes "JOB branded cigarette rolling papers to consumers across the United States." *Id.*, ¶¶ 14, 16. These "JOB-brand products" are manufactured exclusively in France, under the direction of Republic Tobacco. *Id.*, ¶¶ 19-20.

On May 20, 2020, Republic sent an investigator to Gross's tobacco shop, Tees Cheap Tobacco ("Tees"), to perform a "test buy." Doc. No. 1 at 24-25; Doc. No. 52 at 4, ¶ 1. While at Tees, Republic's investigator purchased JOB-branded cigarette rolling papers that either contained Republic's trademark, or a counterfeited "substantially indistinguishable" trademark. Doc. No. 1 at 6, ¶ 25; *id.* at 24-25; Doc. No. 52 at 4, ¶ 1. After "visually inspect[ing] the test buy products," the investigator prepared a report to Republic's then-counsel, the Ticktin Law Group ("Ticktin"). Doc. No. 52 at 4, ¶¶ 1-2; *see also* Doc. No. 6 at 11 (Investigator's Report). This report stated that

the rolling papers had counterfeit identifiers, improper markings, an incorrect spine adhesive, a rough die cut window, a dull paper glue line, inaccurate colors, and an upside-down logo.  Doc. No. 6 at 11.  At that time, neither Republic, its counsel, nor its investigator sent Gross's cigarette rolling papers to be properly authenticated.  Instead, they relied on the investigator's report and sent Gross a Cease and Desist Letter.  *Id.*; Ex. 1, Doc. No. 52-1.  This letter stated that an investigator for Ticktin "observed that [Tees] was offering for sale counterfeit cigarette papers."  Ex. 1, Doc. No. 52-1.  Based on this observation, Republic provided Gross with eleven days[1] to respond to their letter or it would file a lawsuit against her.  *Id.*  Gross did not respond to this letter, and on September 18, 2020, Republic filed their complaint against Gross and Tees for trademark infringement based on the sale of these JOB-branded cigarette papers.  *See generally* Doc. No. 1.

On December 17, 2020, Republic effectuated service on Gross, and on January 4, 2021, Gross filed her *Answer*.  Doc. No. 6.  In her *Answer*, Gross denied that the cigarette papers were counterfeited, and stated that she bought the papers from a licensed wholesaler — Sunshine Wholesale — located in Beaumont, "which is a vendor of JOB papers."  Doc. No. 6 at 1 (capitalizations omitted).  Here, it appears that, in part, Gross mistakenly believed that Republic also alleged that the cigarette papers were defective — that Gross was liable for selling an unfit or dangerous product — and Gross therefore answered that "they [Republic] should [have] warn[ed] the consumer and we would have been more careful about those products or even had [bought] them at all."  *Id.* at 2.  As part of her *Answer*, Gross entitled the caption as a "Counter-Claim," and in part of her *Answer*, brought forth her own allegations against Republic.  *Id.* at 1 ("[Y]ou [knew]

---

[1] The undersigned notes that the Cease and Desist Letter is dated June 29, 2020, and required a response by July 10, 2020.  However, it is unknown when Gross received this letter; thus, she may have been afforded even less time to respond.

that we would not have the funds to fight and that is [an] unfair business practice."); *id.* (alleging "deceptive, fraudulent, or otherwise unethical" trade practices).

On December 20, 2021, Gross filed an *Affidavit* (Doc. No. 15), attaching a purchase receipt for the cigarette papers. This receipt showed that Sunshine Wholesale purchased the cigarette papers from Republic Tobacco on February 3, 2021. Doc. No. 15 at 4. At that juncture, Republic sent the purportedly counterfeit cigarette papers to "a laboratory in France," which confirmed Gross's papers were authentic and not counterfeit. Doc. No. 16 at 1-2, ¶ 3. Between January 17, 2022 and April 26, 2022, the parties disputed whether Gross had properly brought counterclaims against Republic, while Republic sought to dismiss this case under Rule 41(a)(2). *See, e.g.*, Doc. Nos. 16-19 (relating to Republic's Rule 41 motion for entry of dismissal); *see also* Doc. Nos. 26, 27 (relating to to striking counterclaims).

On April 26, 2022, the undersigned ruled that given a liberal construction, Gross had properly pleaded counterclaims in her *Answer*, and therefore denied Republic's *Motion to Strike "Counter-Claim" From the Case Caption of the Answer and Defendant's Objection to Dismissal* (Doc. No. 27). On June 9, 2022, Republic filed its first *Motion to Dismiss*, which was fully briefed by the parties. Doc. Nos. 34-37. On July 21, 2022, the undersigned issued a *Report and Recommendation* (Doc. No. 39), recommending denial of Republic's Rule 41 *Motion for Entry of Order of Dismissal* (Doc. No. 16), which the court adopted on August 16, 2022. Doc. No. 47. In the court's *Order* (Doc. No. 47), Judge Crone agreed with the undersigned that Gross had stated counterclaims such that dismissal of the case under Rule 41 was improper. Doc. No. 47 at 2. However, because the counterclaims were unclear, the court ordered Gross to amend her counterclaims within thirty (30) days or be subject to *sua sponte* dismissal under Rule 41(b). *Id.*

On September 14, 2022, Gross filed her *Amended Counterclaims for Injunctive Relief and Damages* ("Amended Counterclaims"). Doc. No. 50. On September 28, 2020, Republic filed the instant *Motion to Dismiss Amended Counterclaims* ("Motion" or "Motion to Dismiss") pursuant to Rule 12(b)(6). Doc. No. 52. On October 18, 2022, Gross filed her *Response to Counter-Defendant's Motion to Dismiss* ("Response") (Doc. No. 54), and on October 20, 2022, Republic filed their *Reply to Response* ("Reply"). Doc. No. 56. The matter is ripe for consideration and disposition, and the undersigned will now turn to the instant motion.

## II.  Legal Standard

### A.  Rule 12(b)(6)

Under Rule 12(b)(6), a court may dismiss a complaint for "failure to state a claim upon which relief can be granted." FED. R. CIV. P. 12(b)(6). To survive a Rule 12(b)(6) motion to dismiss, a complaint must provide "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Gonzalez v. Kay*, 577 F.3d 600, 603 (5th Cir. 2009) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). The plaintiff's complaint "does not need detailed factual allegations," but her complaint "must raise a right to relief above the speculative level," providing "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action." *Twombly*, 550 U.S. at 555; *Stringer v. Remington Arms Co., L.L.C.*, 52 F.4th 660, 661 (5th Cir. 2022) (citations omitted).

When assessing a motion to dismiss under this Rule, the court must accept as true all well-pleaded facts in the plaintiff's complaint and view those facts in the light most favorable to the plaintiff. *Bowlby v. City of Aberdeen*, 681 F.3d 215, 219 (5th Cir. 2012). However, courts must

"identify and disregard conclusory allegations because they are 'not entitled to the assumption of truth.'" *Lamar Cnty. Elec. Coop. Ass'n v. McInnis Bros. Constr., Inc.*, No. 4:20-CV-930, 2021 WL 1061188, at *4 (E.D. Tex. Mar. 19, 2021) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 664 (2009)). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678 (internal citation omitted). The court's review is limited "to the complaint, any documents attached to the complaint, and any documents attached to the motion to dismiss that is central to the claim and referenced by the complaint." *Lone Star Fund V (U.S.), L.P. v. Barclays Bank PLC*, 594 F.3d 383, 387 (5th Cir. 2010) (citation omitted).

## III.    Discussion

Liberally construed, Gross's *Amended Counterclaims* (Doc. No. 50) allege that Republic: (1) committed "Fraud and Swindles" under 18 U.S.C. § 1341; (2) breached their fiduciary duty under 29 U.S.C. § 1109; (3) negligently manufactured the cigarette papers under a theory of products liability; (4) committed civil racketeering offenses; (5) maliciously prosecuted her in Republic's initial lawsuit against her; (6) violated Rule 11 by bringing a frivolous lawsuit; and (7) owes her exemplary damages under Rule 41.003 of the Texas Civil Practice and Remedies Code. *See* Doc. No. 50 at 6-11. Gross also seeks injunctive relief under her theories of racketeering and Rule 11. *Id.* at 9, 11.

As a threshold matter, Republic, understanding that the court must liberally construe Gross's pleadings, provided arguments relating to possible allegations concerning the tort of intentional infliction of emotional distress ("IIED") and the Texas Deceptive Trade Practices Act ("DTPA"). *See* Doc. No. 52 at 17-21. While the court will liberally construe Gross's claims to the fullest extent given her *pro se* status, her *Amended Counterclaims* do not raise these allegations nor causes of action. *Jennings v. Towers Watson*, 11 F.4th 335, 341 (5th Cir. 2021) (internal

citations and quotation marks omitted) ("A pro se litigant's pleadings are construed liberally.");

*Birl v. Estelle*, 660 F.2d 592, 593 (5th Cir. 1981) ("The right of self-representation does not exempt

a party from compliance with relevant rules of procedural and substantive law."); *see also* FED. R.

CIV. P. 8(a)(2) (requiring "a short and plain statement of the claim showing that the pleader is

entitled                                        to                                        relief").

As such, the court will not discuss Republic's arguments relating to Gross's hypothetical

IIED and DTPA claims, in anticipation of such a liberal construction.  The court will liberally

construe Gross's pleadings to the fullest extent, but it will not create causes of action where they

do not exist.  *Price v. Collin Cnty. Det. Facility*, No. 4:21-cv-729-SDJ-KPJ, 2022 WL 4480320,

at *2 (E.D. Tex. Sept. 1, 2022) (internal citation and quotation marks omitted) ("But liberal

construction does not require that the Court . . . create causes of action where there are none."), *R.

& R. adopted*, No. 4:21-cv-729-SDJ-KPJ, 2022 WL 4474903 (E.D. Tex. Sept. 26, 2022); *see also*

*Kiper v. Ascension Parish Sch. Bd.*, No. 4-13-JWD-SCR, 2015 WL 2451998, at *1 (M.D. La. May

21, 2015) ("The court is not required to search for or try to create causes of actions or find material

issues of fact for *pro se* plaintiffs.").  The court will discuss each of Gross's alleged counterclaims

in turn.

### A.  18 U.S.C. § 1341: Fraud and Swindles

Gross's first count is a counterclaim for Fraud and Swindles under 18 U.S.C. § 1341.  Doc.

No. 50 at 6.  While Gross's first count, under the heading of "Fraud and Swindles," also contains

claims for racketeering and theories of products liability, the court will address these latter two

claims in their own respective sections of this report.  *See infra* Sections III.C–D.

Alleging violations of 18 U.S.C. § 1341, Gross avers that Republic's initial investigation

and subsequent findings were fraudulent.  Doc. No. 50 at 6-7.  Specifically, Gross states,

"[Republic's] investigator made [h]is [d]etermination, while still parked in the [s]tore [p]arking [lot], [f]raudulent finding, in all of [o]ne [m]inute." *Id.* at 7. Additionally, Gross contends that because Republic's cigarette papers were defectively manufactured, and therefore "[c]ounterfeit paper products[,] [t]hese papers are associated with fraud."[2] *Id.* Lastly, while not clearly alleged, the undersigned liberally construes Gross's last claim for fraud as pertaining to Republic's initial "[f]raudulent [l]awsuit[]." *Id.* Republic moves to dismiss this allegation primarily under Federal Rule of Civil Procedure 9(b), arguing that Gross pleaded this fraud claim under a theory of common law fraud, and therefore failed to plead her fraud claims with particularity.

Title 18 U.S.C. Section 1341 is part of the larger United States criminal code, and is entitled "Frauds and Swindles" under Chapter 63, "Mail Fraud and Other Fraud Offenses." *See* 18 U.S.C. § 1341. Thus, as part of the criminal code of Title 18, this presents Gross's first obstacle — as a private citizen, Gross does not have standing to bring a federal criminal prosecution against Republic under this section. *Gill v. State of Tex.*, 153 F. App'x 261, 263 (5th Cir. 2005) ("[D]ecisions whether to prosecute or file criminal charges are generally within the prosecutor's discretion, and, and as a private citizen, [the plaintiff] has no standing to institute a federal criminal prosecution and no power to enforce a criminal statute."); *Boone v. Dandy B Logistics LLC*, No. 6:21-cv-9-JDK-KNM, 2021 WL 2784295, at *2 (E.D. Tex. Jan. 28, 2021) ("The plaintiffs' other

---

[2] Once more, this allegation is likely a result of Gross's initial confusion interpreting Republic's original Complaint. *See* Doc. No. 6 at 2. Republic's initial complaint (Doc. No. 1) did raise allegations that Gross's cigarette papers were counterfeit, and the investigator's report indeed discussed her papers having counterfeit identifiers, an incorrect spine adhesive, a rough die cut window, a dull paper glue line, and inaccurate colors, among other descriptions. Doc. No. 6 at 11.

Ultimately, however, Republic never alleged that Gross's cigarette papers were damaged or harmful such that Gross was ever liable under theories of products liability. Understandably, because the investigator's report provides what may be inferred as criticisms to the papers' characteristics, Gross responded in kind. *See, e.g.*, Am. Counterclaims, Doc. No. 50 at 7 ("The [ ] Investigator witness[ed] how bad these papers were manufactured and wanted them immediately removed from the market place [sic] due to poor and scandalous manufacturing. The Investigator witness[ed] how bad the papers were that was [sic] for sale to consumers that created the Fraudulent Lawsuits.").

claims of tax evasion, money laundering, and identity theft are all mainly covered by criminal statutes, and it is unclear under what private right of action the plaintiffs are suing defendants for these crimes."), *R. & R. adopted*, 6:21-cv-9-JDK-KNM, 2021 WL 1626735 (E.D. Tex. Apr. 27, 2021).

Furthermore, it is well-settled that this particular statute does not afford a private right of action. *See Bell v. Health-Mor, Inc.*, 549 F.2d 342, 346 (5th Cir. 1977) ("Finally, plaintiffs maintain that they have a private right of action under the Federal Mail Fraud and Lottery statutes, 18 U.S.C. ss 1302 et seq., 1341 et seq. . . . our decision in *Napper v. Anderson*, 500 F.2d 634 (CA5, 1975) . . . forecloses any such claim of a private right of action under these statutes.") (citation in original); *compare with* Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. § 1964(c) (stating private right of action in language of statute: "[a]ny person injured in his business or property by reason of a violation of section 1962 of this chapter may sue therefor in any appropriate United States district court . . .").

Accordingly, while Republic did not discuss Gross's failure to establish a private right of action in its present motion (Doc. No. 52), the court has no alternative but to recommend dismissing Gross's claim pursuant to 18 U.S.C. § 1341 for "Fraud and Swindles." The undersigned will, however, liberally construe Gross's *Amended Counterclaims* (Doc. No. 50) and analyze, as Republic suggests and adequately discusses, whether Gross has pleaded a claim for common law fraud.

### B. Common Law Fraud

In Texas, the elements to state a claim for common law fraud are:

(1) The defendant made a representation to the plaintiff; (2) the representation was material; (3) the representation was false; (4) when the defendant made the representation the defendant knew it was false or made the representation recklessly and without knowledge of its truth; (5) the

defendant made the representation with the intent that the plaintiff act on it; (6) the plaintiff relied on the representation; and (7) the representation caused the plaintiff injury.

*Shandong Yinguang Chem. Indus. Joint Stock Co. v. Potter*, 607 F.3d 1029, 1032-33 (5th Cir. 2010) (citing *Ernst & Young, L.L.P. v. Pacific Mut. Life Ins. Co.*, 51 S.W.3d 573, 577 (Tex. 2001)).

Importantly, Federal Rule of Civil Procedure 9(b) applies to all claims alleging fraud. FED. R. CIV. P. 9(b). "Rule 9(b) contains a heightened pleading standard and requires a plaintiff to plead the circumstances constituting fraud with particularity." *Ford v. Allstate Tex. Lloyd's*, No. 1:21-CV-189, 2022 WL 1651931, at *2 (E.D. Tex. May 3, 2022) (citing *City of Clinton, Ark. v. Pilgrim's Pride Corp.*, 632 F.3d 148, 153 (5th Cir. 2010)), *R. & R. adopted*, No. 1:21-CV-189, 2022 WL 1651921 (E.D. Tex. May 23, 2022). "At a minimum, [Rule 9(b)] requires that a plaintiff set forth the 'who, what, when, where, and how' of the alleged fraud." *U.S. ex rel. Williams v. Bell Helicopter Textron Inc.*, 417 F.3d 450, 453 (5th Cir. 2005) (internal citation and quotation omitted). The Fifth Circuit has been clear that particularity requires the plaintiff allege the particulars of "time, place, and contents of the false representations, as well as the identity of the person making the misrepresentation and what he obtained thereby." *Benchmark Elecs., Inc. v. J.M. Huber Corp.*, 343 F.3d 719, 724 (5th Cir. 2003) (internal citation and quotation marks omitted).

Here, liberally construed, Gross alleges Republic committed fraud when: (1) their investigator made a "[f]raudulent finding" that Gross's cigarette papers were counterfeit and damaged; (2) Tees Tobacco Shop sold allegedly fraudulent rolling papers; and, potentially, (3) Republic initiated their initial lawsuit against her for trademark infringement. Doc. No. 50 at 7 (mentioning "Fraudulent Lawsuits."). Republic moves to dismiss this claim on the grounds that Gross did not plead these claims with enough particularity to pass muster under Rule 9(b), and

further, that because the investigator's report did not make the statements *to her*, she cannot proceed on her fraud claims.

First, Gross has not plausibly stated a claim that Republic allegedly sold fraudulent rolling papers. Doc. No. 50 at 7 ("Counter-Defendants (Manufacturer) [f]ailed to [w]arn the [r]etailers and the [c]onsumers of the [d]angers [a]ssociated with their Counterfeit paper products. These papers are associated with fraud and counterfeit."). This allegation, when liberally construed, more likely falls under Gross's products liability claim and the undersigned will discuss this at that juncture. *See infra*. Second, the court agrees with Republic that their investigator did not make the allegedly fraudulent statements contained in the report *to Gross*. Doc. No. 52 at 9. Indeed, the first element of fraud requires: "(1) the defendant made a representation to the plaintiff." *Potter*, 607 F.3d at 1032. While Gross received a copy of the investigator's report (Doc. No. 6 at 11), the investigator is (1) not a named defendant in this case; and (2) did not send its report to Gross. Instead, the investigator's report is clearly addressed to "The Ticktin Law Group, PLLC." Doc. No. 6 at 11 (capitalizations omitted).

Further, it is unclear exactly when Gross received this report — whether it was before or after Republic filed its initial lawsuit, at the same time Republic sent their Cease and Desist Letter, or whether this report was attached as part of the summons to the complaint. Evidently, Gross had this report by the time she filed her *Answer* (Doc. No. 6) in January 2021. However, this cannot satisfy Rule 9(b)'s particularity requirements, as Gross never alleged the "who, what, when, where, and how" surrounding her receipt of this report. *Bell Helicopter Textron*, 417 F.3d at 453. For both reasons — that *Republic* did not make this representation to Gross, but rather that an investigator made it to Republic (or its attorneys), and that Gross failed to plead with particularity

the circumstances surrounding her receipt of this alleged misrepresentation — Gross's fraud claim should be dismissed.

Next, while the particularities surrounding Republic's initial litigation are apparent, Gross cannot plausibly succeed on her fraud claim regarding Republic's initial complaint against her. Here, the court can plausibly decipher the particularities involved in Gross receiving her complaint with the alleged fraudulent misrepresentations: the complaint, summons and receipt show the "who, what, when, where, and how" that Rule 9(b) demands. *Bell Helicopter Textron*, 417 F.3d at 453. However, Gross has not plausibly stated a claim that just by initiating this litigation, Republic engaged in fraudulent conduct. If a defendant counterclaimed that every claim a plaintiff made against them constituted fraud, the judiciary would effectively be overwhelmed with defendants/counter-plaintiffs alleging that the plaintiff(s) made fraudulent allegations. It is for the plaintiff to adequately plead and prove its case against a defendant, and for the court and/or trier of fact to determine the sufficiency, veracity, and legitimacy of the claims contained in a plaintiff's allegations. The undersigned will therefore liberally construe this allegation as part of Gross's other counterclaims for malicious prosecution and for a Rule 11 violation. As such, the undersigned recommends granting Republic's motion to dismiss Gross's fraud claims.

### C.  **29 U.S.C. § 1109**

Next, Gross raises counterclaims that Republic violated 29 U.S.C. § 1109 by breaching its fiduciary duty owed to her when: Republic's investigator determined her cigarette papers were "fraudulent due to poor manufacturing"; Republic allegedly lied about her papers being counterfeited; Republic filed its lawsuit against her, allegedly knowing that defending the suit

would cost her financial hardship; and when Republic changed legal counsel in this lawsuit but Gross allegedly failed to receive the filing.[3]  Doc. No. 50 at 7-8.

Title 29 U.S.C. Section 1109, "Liability for breach of fiduciary duty," is a subsection of the Employee Retirement Income Security Act of 1974 ("ERISA").  *See* 29 U.S.C. § 1109.  This statute is inapplicable to the instant case, as the statute was enacted with the purpose of "protect[ing] working men and women from abuses in the administration and investment of private retirement plans and employee welfare plans." *Donovan v. Dillingham*, 688 F.2d 1367, 1370 (11th Cir. 1982).  ERISA's statutory ambit "established minimum standards for vesting of benefits, funding of benefits, carrying out fiduciary responsibilities, reporting to the government and making disclosures to participants."  *Id.* (citing legislative report).

Moreover, even if the court liberally construes Gross's counterclaims to allege a count for breach of fiduciary duty, Gross has still not plausibly pleaded such a claim.  A claim for breach of fiduciary duty necessarily requires the existence of a fiduciary relationship between the plaintiff and defendant.  *See Navigant Consulting, Inc. v. Wilkinson*, 508 F.3d 277, 283 (5th Cir. 2007) (quoting *Jones v. Blume*, 196 S.W.3d 440, 447 (Tex. App.—Dallas 2006, pet. denied)).  "In Texas, a fiduciary relationship exists when 'the parties are under a duty to act for or give advice for the benefit of another upon matters within the scope of the relationship.'" *Drywall Elements, LLC v. Edward Wolff & Assocs., LLC*, 4:21-cv-537-CAN, 2022 WL 4667997, at *8 (E.D. Tex. Sept. 30, 2022) (internal citation omitted).

Here, the parties are not in a fiduciary relationship with each other; in fact, they have *no* relationship with one another.  Republic has filed a lawsuit against Gross, and Gross has filed

---

[3] Additionally, Gross raises allegations for theories of products liability and racketeering in this portion of her *Amended Counterclaims*. *See* Doc. No. 50 at 7-8.  The undersigned will address the merits of these claims later in this report.

counterclaims against Republic. *See* Doc. Nos. 1, 6, 50. Republic are two corporations, and Gross is the owner of a small tobacco shop. Indeed, the parties are not even in a contractual relationship with each other, as Gross purchased her cigarette papers from Sunshine Wholesale. Doc. No. 15 at 4. At best, because Sunshine purchases the cigarette papers from Republic, and Gross purchases the papers from Sunshine, the parties have an indirect contractual relationship. However, "a contractual obligation does not generally give rise to a fiduciary duty." *Johnson v. Brewer & Pritchard, P.C.*, 73 S.W.3d 193, 203 (Tex. 2002). The "narrow exception is where the contract itself creates a fiduciary duty," and that is clearly not present in this case. *Drywall Elements*, 2022 WL 4667997, at *8 (citing *Lincoln Gen. Ins. Co. v. U.S. Auto Ins. Servs., Inc.*, 787 F.3d 716, 727 (5th Cir. 2015)).

Therefore, as the parties do not have an employment relationship with each other that would give rise to a potential ERISA claim, and the parties' indirect contractual relationship forecloses the existence of a fiduciary relationship, the undersigned recommends granting Republic's motion to dismiss Gross's breach of fiduciary duty claim.

### D. Products Liability Negligence

Throughout Gross's *Amended Counterclaims*, she brings allegations under theories of products liability. *See* Doc. No. 50 at 3, 7-8. As previously stated, Gross likely mistakenly interpreted Republic's original complaint and investigative report to allege that Tees Tobacco Shop sold defective, damaged, or even harmful cigarette rolling papers. *See, e.g.*, Doc. No. 6 at 2; Doc. No. 50 at 3. In her *Answer* (Doc. No. 6), and repeated in her *Amended Counterclaims* (Doc. No. 52), Gross states that, "if my papers are counterfeit .. . they [Republic] should have warned the consumer and we would have been more careful purchasing those products or not [sic] purchase them at all." Doc. No. 50 at 3; *see also* Doc. No. 6 at 2.

14

In Count One of her *Amended Counterclaims*, Gross states, "[t]he [ ] Investigator stated that the papers I have were terribly manufactured. . . .[t]he [ ] Investigator witness[ed] how bad these papers were manufactured and wanted them immediately removed from the market place [sic] due to poor and scandalous manufacturing." Doc. No. 50 at 7. Then in Count Two, under the heading "Negligence [sic] Product Liability," Gross repeats the events of the investigator's "test buy," and then states the manufacturer "[b]reached their [d]uty to [t]he [ ] (Retailer). The Retailer did nothing out of the way or incorrect. The Retailer purchased papers from the Manufacturer's Approved Wholesaler." *Id.* at 8. The question remaining is whether these allegations, liberally construed, state a claim under theories of products liability. Here, the court holds they do not.

As a threshold matter, it is unclear under which theory of products liability Gross brings her allegations: whether she raises design defect or manufacturing defect claims. Liberally construing her counterclaims, however, Gross believes Republic's investigator criticized "how bad these papers were manufactured." Doc. No. 50 at 7. The court will therefore proceed analyzing Gross's allegations under theories of a manufacturing defect.

"Under Texas law, [a] manufacturing defect exists when a product deviates, in its construction or quality, from the specifications or planned output in a manner that renders it unreasonably dangerous." *Casey v. Toyota Motor Eng'g & Mfg. N. Am., Inc.*, 770 F.3d 322, 326 (5th Cir. 2014) (internal quotation marks absent from original) (quoting *Cooper Tire & Rubber Co. v. Mendez*, 204 S.W.3d 797, 800 (Tex. 2006)). Critically important for *any* products liability action against a manufacturer or seller, the plaintiff must suffer "damages arising out of personal injury, death, or property damage allegedly caused by a defective product whether the action is based in . . . strict products liability, negligence, misrepresentation, breach of express or implied

warranty, or any other theory or combination of theories." *Eckhardt v. Qualitest Pharms., Inc.*, 751 F.3d 674, 678 (5th Cir. 2014) (quoting Tex. Civ. Prac. & Rem. Code Ann. § 82.001(2)).

Thus, Gross's claims for products liability cannot survive a 12(b)(6) challenge, as she (1) has not alleged *any* personal injury, death, or property damage; and (2) has not alleged her cigarette papers deviated in "construction or quality" that rendered them "unreasonably dangerous." *Eckhardt*, 751 F.3d at 678; *Casey*, 770 F.3d at 326.[4]  Therefore, with no alleged injury incurred from the use of the cigarette papers, and the absence of an allegation that the papers are unreasonably dangerous, the undersigned recommends granting Republic's motion to dismiss on Gross's products liability claims.

## E.  RICO Claims

Moving along, Gross next raises a claim for racketeering, which the undersigned will liberally construe to fall under the Racketeer Influenced and Corrupt Organizations Act ("RICO"). *See* 18 U.S.C. § 1964(c) (providing private right of action for claims brought under § 1962).

Gross brings these racketeering allegations in several places throughout her *Amended Complaint* (Doc. No. 50 at 7-9), and at one point, requests injunctive relief based on this claim. Doc. No. 50 at 9 ("I am asking the Court to bring in an Injunction and put a stop to this Racketeering.").  Gross's allegations primarily rely on Republic's initial lawsuit filed against her. Essentially, Gross argues that Republic knew that the cigarette papers were authentic at the start of their lawsuit against her, knew it would cause her financial hardship to defend the case, and contends they were "in cahoots with" the investigator all along since the investigator allegedly only took "[o]ne minute" to determine her cigarette papers were counterfeit.  Doc. No. 50 at 7-9.

---

[4] Indeed, it is unlikely that Gross actually intended to bring this cause of action at all, as not only did Republic and its investigator not allege that her cigarette papers were defective or harmful in any way, but Gross probably did not intend to suggest that she sells harmful papers to other consumers.

Additionally, Gross sets forth that Republic's lawsuit against her is part of a grand racketeering scheme against other sellers of the "JOB-branded" items. *Id.* at 7. In support of this claim, Gross attached as Exhibit G a 2021 trademark infringement case arising from the Northern District of Georgia, brought by Republic against distributors of the same cigarette rolling papers. *See* Ex. G, Doc. No. 50 Attach. Op., *Top Tobacco, L.P. v. Star Imps. & Wholesalers, Inc.*, No. 1:19-cv-4939-MLB, 2021 WL 4081627 (N.D. Ga. Sept. 7, 2021); *see also id.*, 2020 WL 4730985 (N.D. Ga. July 14, 2020).

Gross has not pleaded under which sections she brings her RICO claims. RICO's subsections, "state, in their simplest terms, that":

> (a) [A] person who has received income from a pattern of racketeering activity cannot invest that income in an enterprise;
>
> (b) A person cannot acquire or maintain an interest in an enterprise through a pattern of racketeering;
>
> (c) A person who is employed by or associated with an enterprise cannot conduct the affairs of the enterprise through a pattern of racketeering activity; and
>
> (d) A person cannot conspire to violate subsections (a), (b), or (c).

*Abraham v. Singh*, 480 F.3d 351, 354-55 (5th Cir. 2007) (citing 18 U.S.C. § 1962(a)-(d)).

Regardless of the subsection pleaded, RICO claims require showing three elements: "'(1) a person who engages in (2) a pattern of racketeering activity, (3) connected to the acquisition, establishment, conduct, or control of an enterprise.'" *Id.* (quoting *Word of Faith World Outreach Ctr. Church, Inc. v. Sawyer*, 90 F.3d 118, 122 (5th Cir. 1996)). A "pattern of racketeering activity" "requires at least two acts of racketeering activity," which the statute defines with a long laundry list of criminal acts that constitute "racketeering activity." *See* 18 U.S.C. §§ 1961(1), (5). Essentially, "racketeering activity" requires "two or more predicate criminal acts that are (1)

related and (2) 'amount to or pose a threat of continued criminal activity.'" *Abraham*, 480 F.3d at 355 (quoting *Word of Faith*, 90 F.3d at 122).

The problem here lies in the fact that the mere investigation of a business, followed by the initiation of a lawsuit, does not, in effect, constitute continued criminal activity. *Id.*; *see also* 18 U.S.C. § 1961(1). Indeed, the alleged activity of filing a lawsuit does not fall within the statute's definition of "racketeering activity." 18 U.S.C. § 1961(1). Moreover, even applying all three of RICO's subsections, Gross's allegations do not adequately state a RICO claim: Republic has, by definition, not engaged in a "pattern of racketeering activity" to be liable under any of the three subsections, has not acquired or maintained an enterprise through engaging in their lawsuits, nor have they conducted their business's affairs by engaging in such a "pattern." *Abraham*, 480 F.3d at 354-55. Moreover, the court agrees with Republic that unless the litigation includes bribery or otherwise statutorily-defined nefarious activity, "litigation activity cannot be the predicate for a civil-RICO claim." *Snow Ingredients, Inc. v. SnoWizard, Inc.*, 833 F.3d 512, 524-25 (5th Cir. 2016) (collecting cases).

For these reasons as well, the court cannot grant Gross's request for injunctive relief, and instead agrees with defendant to dismiss this claim. Here, the court will construe Gross's request for injunctive relief as seeking a preliminary injunction against Republic. Doc. No. 50 at 9. Not only is injunctive relief "an extraordinary remedy that requires the applicant to unequivocally show the need for its issuance," *Stan v. Wilmington Sav. Fund Soc'y, FSB*, No. 4:22-cv-907-ALM-KPJ, 2022 WL 17072036, at *2 (E.D. Tex. Oct. 21, 2022) (citation omitted), but the first element for a preliminary injunction requires the plaintiff show "(1) a substantial likelihood that they will prevail on the merits." *City of El Cenizo, Tex. v. Texas*, 890 F.3d 164, 176 (5th Cir. 2018) (internal quotation marks and citation omitted). As Gross has failed to plausibly state her RICO claim, she

has not shown a likelihood of success on the merits for this allegation such that the court should afford her injunctive relief.

Republic's activities simply do not fall within the ambit of RICO's statutorily prescribed activities, which further supports denying Gross's request for injunctive relief on this ground as well. As such, the undersigned recommends granting Republic's motion for this claim.

### F. __Malicious Prosecution__

In her "Prayer for Relief," Gross sets forth her claim for malicious prosecution, including the elements for this allegation. Doc. No. 50 at 11. The undersigned will therefore construe this as a cause of action, rather than as a stated request for relief. Specifically, Gross states, "CC has been malicious prosecuted [sic] in the common law tort under unjustified litigation."[5] Doc. No. 50 at 11. Gross then proceeds to cite two cases from the Fifth Circuit and recite the elements for a criminal malicious prosecution claim. *Id.*

Even liberally construing Gross's claim to the fullest extent, however, this claim must fail. These are the exact type of "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, [that] do not suffice." *Iqbal*, 556 U.S. at 678 (internal citation omitted); *see also Helayas Logistics LLC v. Stineman*, No. 4:20-CV-210, 2020 WL 1939187, at *4 (E.D. Tex. Apr. 22, 2020) ("Plaintiff's controlling petition . . . merely recites statutory language and states that 'Defendants' violated it."). "Although a complaint 'does not need detailed factual allegations,' the 'allegations must be enough to raise a right to relief above the speculative level." *Jordan v. Flexton*, 729 F. App'x 282, 284 (5th Cir. 2018) (quoting *Twombly*, 550 U.S. at 555). "[C]onclusory allegations or legal conclusions masquerading as factual conclusions will not suffice to prevent a motion to dismiss." *Id.* (quoting *Beavers v. Metro. Life Ins. Co.*, 566 F.3d 436,

---

[5] It is unknown who Gross refers to when she states "CC" as the subject of the prosecution. Nevertheless, the court construes this allegation to mean Republic allegedly maliciously prosecuted her in their original complaint.

439 (5th Cir. 2009)).  Here, Gross merely states the cause of action for malicious prosecution, cites to two cases, and then recites the elements for this claim, with nothing further.  The undersigned is apprised of the facts underlying Republic's initial lawsuit against Gross, however, Gross must still plead more than just the elements of a cause of action — she must show *how* Republic satisfied each element of her claim, and explain why they are liable for the claim alleged.  Essentially, Gross's cause of action is the exact type of pleading deficiency the Supreme Court and Fifth Circuit admonished against.  *Iqbal*, 556 U.S. at 678; *Stringer*, 52 F.4th at 661.

Moreover, while the court must liberally construe Gross's pleadings, she is still required to comply "with relevant rules of procedural and substantive law," and is afforded "no greater rights than a litigant represented by a lawyer."  *Birl*, 660 F.2d at 593.  Thus, Gross must still comply with Rule 8(a)'s requirement that she plead "a short and plain statement of the claim showing that the pleader is entitled to relief."  FED. R. CIV. P. 8(a).  Indeed, the court cannot plead and argue a *pro se* litigant's case for them, lest that "transform the district court from its legitimate advisory role to the improper role of an advocate seeking out the strongest arguments and most successful strategies for a party."  *Rolan v. LaSalle Sw. Corrs.*, No. 3:20-cv-2842-B-BN, 2021 WL 5568168, at *3 (N.D. Tex. Nov. 1, 2021) (internal citation and quotation marks omitted).

Even if Gross's counterclaims were not mere recitation of elements to a cause of action, the court must still grant Republic's motion.  First, it is unclear whether Gross alleges civil or criminal malicious prosecution, and "there is a very clear distinction between civil and criminal malicious prosecution claims under Texas law."  *Matter of Dallas Roadster, Ltd.*, 846 F.3d 112, 126 (5th Cir. 2017) (citations omitted).  Gross first claims Republic is liable for "the common law tort" of malicious prosecution, which would imply a civil malicious prosecution claim, however, then recites the elements for criminal malicious prosecution.  Doc. No. 50 at 11.  The very first

element of a *criminal* malicious prosecution claim requires the plaintiff show "(1) a criminal prosecution was commenced against [her]." *Matter of Dallas*, 846 F.3d at 126 (quoting *Martinez v. English*, 267 S.W.3d 521, 527-28 (Tex. App.—Austin 2008, pet. denied)).  This claim must easily fail, for Republic's initial lawsuit brought against Gross was for trademark infringement — a *civil* proceeding.

Turning to the elements of civil malicious prosecution, this claim still fails.  In Texas, a claim for civil malicious prosecution requires the plaintiff show: "(1) the institution or continuation of civil proceedings against the plaintiff; (2) by or at the insistence of the defendant; (3) malice in the commencement of the proceeding; (4) lack of probable cause for the proceeding; (5) termination of the proceeding in plaintiff's favor; and (6) special damages." *Airgas–Southwest, Inc. v. IWS Gas and Supply of Tex., Ltd.*, 390 S.W.3d 472, 478 (Tex. App.—Houston [1st Dist.] 2012, pet. denied) (internal quotation marks and citations omitted).

Here, the first two elements are easily satisfied, as Republic instituted a civil proceeding against Gross for trademark infringement.  Additionally, liberally construing her counterclaims, Gross may have plausibly stated a claim that Republic filed their lawsuit with malice and without probable cause.  *See* Doc. No. 50 at 7-9 (alleging that Republic was "in cahoots with" the investigator all along since the investigator allegedly only took "[o]ne minute" to determine her cigarette papers were counterfeit); *Campbell v. City of San Antonio*, 43 F.3d 973, 981 (5th Cir. 1995) (requiring allegations that the proceeding was a result of "malice, ill will, or improper purpose" and not merely an "honest, though negligent, mistake."); *Akin v. Dahl*, 661 S.W.2d 917, 920 (Tex. 1983) (holding defendant has initial good faith presumption in favor of bringing its initial lawsuit that the plaintiff can overcome if she shows the "motives, grounds, beliefs and other

evidence upon which the defendant acted were indeed not probable cause to commence the proceedings.").

The undersigned need not address the merits of whether Gross adequately pleaded the malice and probable cause elements, however, as it is clear that she cannot show the last two necessary requirements to satisfy this cause of action: (1) that the initial proceeding terminated in her favor and (2) special damages. *Airgas–Southwest, Inc.*, 390 S.W.3d at 478.  To satisfy the termination element, the plaintiff must show the initial civil proceeding resulted in a final judgment and that all appeals were exhausted. *Texas Beef Cattle Co. v. Green*, 921 S.W.2d 203, 208 (Tex. 1996).  Here, Gross cannot plausibly satisfy this requirement as Republic's litigation never terminated; indeed, Republic's trademark infringement claim against Gross remains pending. Doc. Nos. 39, 47 (report and recommendation and order ruling denying *Motion for Entry of Order of Dismissal* (Doc. No. 16)).

Second, special damages requires demonstrating "some physical interference with a party's person or property in the form of an arrest, attachment, injunction, or sequestration." *Texas Beef*, 921 S.W.2d at 209 (citation omitted).  Indeed, "[i]t is insufficient that a party has suffered the ordinary losses incident to defending a civil suit, such as inconvenience, embarrassment, discovery costs, and attorney's fees. The mere *filing* of a lawsuit cannot satisfy the special injury requirement."  *Id.* at 208-09 (emphasis in original) (citation omitted).  Thus, Gross's understandable frustration and alleged emotional injuries are insufficient to sustain her claim on this ground.  Doc. No. 50 at 8-9 (describing emotional injuries incurred as a result of defending Republic's claim against her).  Accordingly, the undersigned recommends granting Republic's motion on this claim as well.

### G. **Rule 11 Violation**

Also in her "Prayer for Relief," Gross alleges that Republic violated Federal Rule of Civil Procedure 11 by bringing a frivolous lawsuit against her in the original action.  Doc. No. 50 at 11.  Gross therefore seeks sanctions and penalties against Republic, and requests injunctive relief to prohibit Republic "from sending evidence to their laboratories only."  *Id.*  Specifically, Gross states that "[a]n outside [l]aboratory should be used in order to protect the integrity of testing results.  I am requesting the court to have [Republic] to stop using their current identifiers due to faulty results."  *Id.*

Federal Rule of Civil Procedure 11 "provides for sanctions for filing frivolous, baseless claims that are unsupported in law or fact."  *Manson v. Careington Int'l Corp.*, No. 4:20-cv-916-SDJ-CAN, 2021 WL 3912536, at *5 (E.D. Tex. Aug. 6, 2021) (citing FED. R. CIV. P. 11), *R. & R. adopted*, No. 4:20-cv-916-SDJ-CAN, 2021 WL 3884252 (E.D. Tex. Aug. 31, 2021).  In pertinent part, Rule 11 states:

> By presenting to the court a pleading, written motion, or other paper . . . an attorney or unrepresented party certifies that to the best of the person's knowledge, information, and belief, formed after an inquiry reasonable under the circumstances:
>
>> (2) the claims, defenses, and other legal contentions are warranted by existing law . . .;
>>
>> (3) the factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery.

FED. R. CIV. P. 11(b)(2)–(3).

A Rule 11 movant must file their motion "separately from any other motion and must describe the specific conduct that allegedly violates Rule 11(b)."  *Id.* § (c)(2).  Additionally, the movant must serve their motion under Rule 5, and thereafter, the court must provide "notice and a

reasonable opportunity to respond" to the allegedly offending "attorney, law firm, or party." *Id.* §§ (c)(1)–(2).

First, the court cannot proceed to the merits of Gross's request to enjoin Republic pursuant to Rule 11 because this Rule does not create a separate cause of action. *See Nolen v. Henderson Nat'l Corp.*, No. 91-6299, 1993 WL 26817, at *3 (10th Cir. Feb. 5, 1993) ("[C]ourts do not appear to allow Rule 11 to form a basis for a counterclaim, but instead allow Rule 11 sanctions only upon motion.") (collecting cases); *Hooker v. Dallas Indep. Sch. Dist.*, No. 3:09-cv-1289-D, 2010 WL 4025877, at *10 (N.D. Tex. Oct. 13, 2010) ("Rule 11 does not create a cause of action that may be presented by counterclaim.") (citing *Lenoir v. Tannehill*, 660 F. Supp. 42, 43-44 (S.D. Miss. 1986)); *Lenoir*, 660 F. Supp. at 44 ("It appears clearly beyond question that Rule 11 by its express terms only permits an attorney procedurally to raise a claim for sanctions through a motion."). For this reason, Rule 11 requires the movant file a *separate* motion, which "normally will be determined at the end of the litigation," and which "must comport with due process requirements." *See* FED. R. CIV. P. 11(c)(1)–(2); *Id.* advisory committee's notes to 1983 amendment. Therefore, Gross cannot show the necessary first element for injunctive relief — likelihood of success on the merits — because Rule 11 provides no separate "merits" for a claim. *City of El Cenizo*, 890 F.3d at 176. To the extent Gross moves for injunctive relief here on a theory of a fraudulent investigation, the court has already foreclosed such a theory. *See supra* Section III.B.

Moreover, the court cannot ignore Rule 11's command that the movant file a separate motion, provide specific allegations of misconduct, and allow for notice and a reasonable opportunity to respond. FED. R. CIV. P. 11(c)(1)–(2); *Beard v. Experian Info. Sols. Inc.*, 214 F. App'x 459, 462 (5th Cir. 2007) ("Pro se litigants are not exempt from compliance with the rules

of procedure."); *Hassell v. U.S.*, 203 F.R.D. 241, 245 (N.D. Tex. 1999) ("That Plaintiff is *pro se* does not mean he does not have to comply with the Federal Rules of Civil Procedure.").

Even if the court liberally construes Gross's *Amended Counterclaims* (Doc. No. 50) as a separate motion for sanctions, which it cannot, Gross's request for sanctions would still fail. Rule 11 requires an attorney certify the factual contentions and legal arguments underlying their pleading or motion "after an inquiry reasonable under the circumstances." FED. R. CIV. P. 11(b). "The court is expected to avoid using the wisdom of hindsight and should test the signer's conduct by inquiring what was reasonable to believe at the time the pleading . . . was submitted." *Id.* advisory committee notes to 1983 amendment. The Advisory Committee Notes to Rule 11 provides a list of factors to consider when assessing the reasonableness behind a litigant's filing. *Id.* These include, in relevant part, "how much time for investigation was available to the signer; [and] whether he had to rely on a client for information as to the facts underlying the pleading, motion, or other paper." *Id.*

Here, Gross alleges that Republic's investigator determined that her cigarette papers were counterfeit within the span of one minute. Doc. No. 50 at 7 ("The Counter Defendants['] Investigator made [h]is [d]etermination, while still parked in the [s]tore [p]arking [l]ot . . . in all of [o]ne [m]inute.").[6] Gross continues that Republic therefore relied on this faulty investigation report, which was allegedly made with the knowledge that her papers were authentic in the first

---

[6] For this allegation, the undersigned presumes Gross reached this conclusion by comparing the time the investigator documented visiting Tees Tobacco Shop — 10:12 A.M.— with the time noted on the investigator's report, which was the same time. Doc. No. 50 at 23-25. Gross has provided no alternative explanation for this conclusion. Therefore, although the court presumes all well-pleaded facts as true and in light most favorable to the plaintiff, the court reiterates its concurrent authority to review documents attached to the plaintiff's complaint. *Randall D. Wolcott, M.D., P.A. v. Sebelius*, 635 F.3d 757, 763 (5th Cir. 2011) (internal citation omitted) ("[A] court ruling on 12(b)(6) motion may rely on the complaint, its proper attachments, 'documents incorporated into the complaint by reference, and matters of which a court may take judicial notice.'"). Accordingly, the court concludes that the amount of time the investigator undertook to make their faulty determination that Gross's cigarette papers were counterfeit is actually unknown.

place, and Republic's counsel thereafter filed the original complaint in reliance thereof. *Id.* at 7, 11. While the parties and the undersigned now understand that Gross's papers were *always* authentic, the court must avoid "using the wisdom of hindsight," and confine this Rule 11 inquiry to whether it was reasonable to believe Gross's papers were counterfeit at the time Republic's counsel filed this original action. *See* FED. R. CIV. P. 11 advisory committee notes to 1983 amendment. Because the amount of time provided for the investigation is unknown, Republic's counsel — the Ticktin Law Group — had to rely on both its client and their investigator for information regarding the authenticity of Gross's papers, and because the investigator's report provides a detailed description of markers of fraud, that to a reasonable complainant at the time, would serve as a sufficient basis for bringing a lawsuit, the undersigned cannot conclude the original action would have constituted a frivolous lawsuit.

Nevertheless, Gross failed to comply with the procedural constraints set forth in Rule 11, namely, that she must file a separate motion for sanctions, and then allow for the court to thereafter provide the offending party with adequate due process. Moreover, Gross's request for injunctive relief must also fail because Rule 11 does not provide an independent cause of action that allows for such equitable relief. As such, the court recommends granting Republic's motion on this ground as well.

### H. Exemplary Damages

Lastly, Gross requests exemplary damages pursuant to Rule 41 of the Texas Civil Practices and Remedies Code. Doc. No. 50 at 11. Gross alleges that Republic engaged in conduct that was "willful, grossly negligent and malicious," and therefore requests the equivalent of attorneys' fees, inconvenience fees, "[d]amage to property," and damages for "[m]ental anguish" incurred as a result of having to defend this case. *Id.*

Rule 41.003 of the Texas Civil Practice and Remedies Code allow for the award of exemplary damages. Exemplary damages are a form of punitive damages, awarded "as a penalty or by way of punishment but not for compensatory purposes." TEX. CIV. PRAC. & REM. CODE ANN. §§ 41.001(5). The court may impose such punitive damages "only if the claimant proves by clear and convincing evidence" that the claimant seeks recovery for harm caused by "(1) fraud; (2) malice; or (3) gross negligence." *Id.* §§ 41.003(a)(1)–(3). The claimant must have already proven her case to a jury, and such damages may only be awarded "if the jury was unanimous in regard to finding liability for and the amount of exemplary damages." *Id.* § (d).

Here, the court has no alternative but to deny Gross's request for exemplary damages, and grant Republic's motion. Gross has not met her initial burden of proving her case before a unanimous jury that found Republic was liable for the claims alleged. Moreover, the undersigned has already dismissed Gross's fraud counterclaim, and Gross has not alleged malice or gross negligence in her *Amended Counterclaims*, except as a threadbare recital of an element for criminal malicious prosecution (malice). Doc. No. 50 at 11. This is insufficient to state a claim on such grounds and the court will not create a cause of action where one was not alleged. *Iqbal*, 556 U.S. at 678; *Price*, 2022 WL 4480320, at *2 (internal citation and quotation marks omitted) ("But liberal construction does not require that the Court . . . create causes of action where there are none."), *R. & R. adopted*, 2022 WL 4474903 (E.D. Tex. Sept. 26, 2022). Therefore, the undersigned recommends granting Republic's motion on this ground.

## IV.    Recommendation

For the reasons stated above, the undersigned recommends granting Plaintiffs/Counter-Defendants Republic Technologies (NA), LLC and Republic Tobacco LP's *Motion to Dismiss Amended Counterclaims* (Doc. No. 52). Accordingly, Plaintiffs/Counter-Defendants' earlier

*Motion to Dismiss, or in the Alternative, Motion for More Definite Statement* (Doc. No. 34) should be denied as moot.

## V.    Objections

Pursuant to 28 U.S.C. § 636(b)(1)(C), each party to this action has the right to file objections to this Report and Recommendation.  Objections to this Report must (1) be in writing, (2) specifically identify those findings or recommendations to which the party objects, (3) be served and filed within fourteen (14) days after being served with a copy of this Report, and (4) be no more than eight (8) pages in length.  *See* 28 U.S.C. § 636(b)(1)(C); FED. R. CIV. P. 72(b)(2); E.D. TEX. CIV. R. CV-72(c). A party who objects to this Report is entitled to a *de novo* determination by the United States District Judge of those proposed findings and recommendations to which a specific objection is timely made. 28 U.S.C. § 636(b)(1)(C); FED. R. CIV. P. 72(b)(3).

A party's failure to file specific, written objections to the proposed findings of fact and conclusions of law contained in this Report, within fourteen (14) days of being served with a copy of this Report, bars that party from: (1) entitlement to *de novo* review by the United States District Judge of the findings of fact and conclusions of law, and (2) appellate review, except on grounds of plain error, of any such findings of fact and conclusions of law accepted by the United States District Judge.  *See Rodriguez v. Bowen*, 857 F.2d 275, 276-77 (5th Cir. 1988); *Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1428-29 (5th Cir. 1996) (en banc).

SIGNED this 8th day of December, 2022.

Zack Hawthorn
United States Magistrate Judge